J-S23031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK S. RIGGLEMAN | : | |
| | : | |
| Appellant | : | No. 1791 EDA 2024 |

Appeal from the PCRA Order Entered June 6, 2024
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0000509-2019

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED NOVEMBER 4, 2025**

Mark S. Riggleman ("Riggleman") appeals from the denial of his first petition pursuant to the Post Conviction Relief Act ("PCRA").[1]  Because Riggleman's various claims of ineffective assistance of counsel all fail, we affirm the order denying his petition.

This Court synopsized on direct review the factual and procedural history of this case:

> [O]n December 16, 2018, [ ] [Riggleman] and his girlfriend, Amy Maurer ("[the v]ictim" [or alternatively "Maurer"]), returned to her home in the City of Bethlehem after a night together at a Christmas party and a local bar.  During a fight about [Riggleman's] behavior around other women, [the v]ictim demanded [Riggleman] leave her home where he had been residing.  The argument became physical, [and there is no dispute Maurer was the initiator, after which, Riggleman] pinned [the v]ictim to the ground, struck her multiple times in the head, and

_____

[1] **See** 42 Pa.C.S.A. §§ 9541–9546.

choked her. The majority of the assault was recorded on [Riggleman's] cellphone. Due to the attack, [the v]ictim suffered a ruptured left ear drum, a fractured left metacarpal on her hand that required surgery, and multiple contusions to her face, neck, arms, and legs. Riggleman was arrested and charged.

Following trial, [at which Maurer and Riggleman testified, the jury saw the video partially capturing the assault, and Riggleman was impeached by *crimen falsi* convictions from more than ten years before trial, without objection,] a jury convicted Riggleman of aggravated assault (attempt to cause serious bodily injury) and simple assault. Additionally, the trial court found him guilty of harassment.

* * * *

Afterwards, the trial court sentenced Riggleman to 84 to 180 months' incarceration for aggravated assault; simple assault merged with the aggravated assault for purposes of sentencing. The court imposed no further penalty for harassment. . . ..

***Commonwealth v. Riggleman***, 290 A.3d 704 (Pa. Super. 2022) (internal

citation and indentation omitted). In December 2022, this Court affirmed

Riggleman's judgment of sentence, and he did not seek further review with

our Supreme Court.

In March 2023, Riggleman filed a timely first, counseled, PCRA petition

alleging ineffectiveness of trial counsel for the following reasons: (1) informing

the jury, and also failing to contest the admission at trial, of Riggleman's prior

convictions for the *crimen falsi* offenses of burglary, theft, and conspiracy to

commit burglary in 1991 and 1993; (2) providing to the Commonwealth, in

an attempt to obtain dismissal of the charges, a video partially capturing the

assault, which was admitted at trial. ***See generally*** Post Conviction Collateral

Relief Issues, 3/21/23. The PCRA court held an evidentiary hearing in August

2023, after which the parties filed briefs, and the court thereafter denied relief. *See* PCRA Ct. Op. & Order, 6/6/24. Riggleman timely appealed, and he and the PCRA court complied with Pa.R.A.P. 1925. Additionally, Riggleman, with newly appointed PCRA appellate counsel, asserted in his Rule 1925(b) statement for the first time—pursuant to *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021)[2]— the ineffectiveness of first PCRA counsel for failing to raise the issue of trial counsel's ineffectiveness for failing to object to allegedly "quasi-expert and opinion testimony" at trial by Officer Andrew DeFrank ("Officer DeFrank"). *See* Rule 1925(b) Statement, 8/23/24, at ¶ 3(b).[3]

Riggleman raises the following issues for our review:

I. Whether trial counsel provided the ineffective assistance of counsel in failing to object and in actually introducing evidence himself that [Riggleman] had numerous extremely old convictions for burglary, theft, and conspiracy where the trial court would have excluded the convictions had trial counsel simply objected and refrained from introducing the convictions himself.

II. Whether trial counsel provided the ineffective assistance of counsel in providing a video of part of the incident to the Commonwealth without [Riggleman's] permission given that the PCRA Court in its opinion found that the video was so damaging to [his] defense that even the erroneous admission

---

[2] The PCRA court addressed Riggleman's *Bradley* claim in its Rule 1925(a) opinion.

[3] Officer DeFrank, in his testimony at trial, explained the steps of his investigation culminating in filing charges against Riggleman: based on Maurer's statements and documentation of her injuries, Officer DeFrank determined that, while Maurer was the "initial aggressor," charges were warranted because Riggleman was the "primary aggressor." *See* N.T., 4/6/21, at 162-63.

of numerous burglary convictions could not have made a difference in the outcome of the trial.

III. Whether PCRA counsel should have challenged trial counsel's failure to object to improper testimony from the arresting officer to the effect that [Riggleman] was the "primary aggressor" because the testimony suggested that the officer was an expert witness who had made a binding legal determination and the testimony amounted to improper quasi-expert opinion testimony which improperly bolstered the complainant's credibility.

Riggleman's Br. at 4-5.

Our standard of review of an order dismissing a PCRA court petition is well settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Staton**, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." **Commonwealth v. Wholaver**, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." **Id**. at 145 (internal citation omitted).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from

one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. *See* 42 Pa.C.S.A § 9543(a)(2)(ii); *see also Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa. Super. 2016). Generally, to prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Benner*, 147 A.3d at 920 (internal citations and quotations omitted).[4] The failure to satisfy any of these prongs is fatal to a petitioner's claim. *See id*. Additionally, counsel is presumed effective. *See id*.

In his first issue, Riggleman argues trial counsel was ineffective for failing to object to the admission of his prior *crimen falsi* convictions that were

_____

[4] Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Lott*, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted). For the "no reasonable basis" prong, the petitioner must show that counsel "had no reasonable basis designed to effectuate his client's interests." *Id*. (internal citation and quotations omitted). Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted).

more than ten years old.  Pennsylvania Rule of Evidence 609 provides for the admissibility of prior *crimen falsi* convictions:

> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> > (1) its probative value substantially outweighs its prejudicial effect; and
> >
> > (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b).  Relevantly, section 5918 of the Judicial Code also provides that, where a defendant offers evidence of good character, courts may permit evidence to contradict the assertion:

> No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:
>
> > (1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation[ . . ..]

42 Pa.C.S.A. § 5918. ***Accord Commonwealth v. Bullock***, 286 A.3d 1282, 1287 (Pa. Super. 2022) (affirming admission of prior conviction for public drunkenness where the defendant on direct examination claimed she had never been arrested). Where evidence of prior criminal convictions was admitted, but may have been deemed inadmissible by the trial court, an ineffectiveness claim may fail where counsel had a reasonable basis or because of lack of prejudice. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1264-65 (Pa. Super. 2014).

Riggleman argues trial counsel was ineffective for informing the jury during opening arguments of his prior *crimen falsi* convictions, and not objecting to admission of evidence of the same, when the convictions would not have been admissible under Rule 609(b) because they were more than ten years old and the PCRA court opined it would not have admitted the convictions. ***See*** Riggleman's Br. at 29. Riggleman additionally argues trial counsel was ineffective because he did not obtain a ruling that the convictions were admissible before proceeding with the strategy of informing the jury of them and not objecting to their admission. ***See id***. Riggleman maintains because this case turned on credibility, the jury convicted him because he had been a burglar. ***See id***. at 29, 31-32.

The PCRA court considered Riggleman's arguments and concluded they merit no relief. Initially, the court reasoned that based on the age of the convictions, and the fact that credibility was an issue at trial, it would have

determined the probative value of the convictions did not substantially outweigh their prejudicial effect and would not have been admitted. ***See*** PCRA Ct. Op. & Order, 6/6/24, at 6-7. The court likewise determined that counsel's stated reasons for not contesting the convictions, namely that they would have been admitted for one reason or another, was unreasonable. ***See id***. at 7-8. However, the court concluded that Riggleman's claim fails for lack of prejudice:

> The court cannot conclude that, but for counsel's failure to seek such a pretrial ruling, the result of the trial might have been different. The verdict in this case was not weakly supported by the record. To the contrary, the crime itself was mostly captured on the video discussed above. In that video, the jury saw [Riggleman] and [Maurer] arguing, saw a physical altercation ensue, and could hear [Maurer] being assaulted and choked. In fact, the court could hear [Maurer] being strangled and gasping for air despite the jury having acquitted [Riggleman] of strangulation. In sum, there was significant evidence presented to the jury to support [Riggleman's] convictions for [Maurer's] assault, simple assault, and harassment, including [Maurer's] credible testimony that corroborated the video, along with the ***photographs and medical evidence*** that demonstrated the serious injuries that [she] sustained as a result of the assault. Thus, there is no basis for the court to conclude that the trial was unreliable, that there was a breakdown in the adversarial process, or that the issues concerning [Riggleman's] prior record substantially undermine confidence in the verdict. For these reasons, [Riggleman's] . . . issue does not establish any right to post-conviction relief.

***Id***. at 8-9 (emphasis added).

Following our review, we conclude the PCRA did not abuse its discretion or commit an error of law in denying Riggleman relief based on this claim

because Riggleman has failed to show prejudice.[5]  We note the following trial evidence. Maurer testified to Riggleman's assault and her consequent injuries, which were documented by hospital personnel after she went to the emergency room:  Maurer testified that while she initiated the physical confrontation with Riggleman by knocking a pizza out of his hands and pushing him and causing him to stumble down a couple of stairs, subsequently, as their altercation continued—and despite Maurer telling Riggleman multiple times to leave, which he disregarded—Riggleman straddled her, sat on top of her, and hit her in the head between three and five times.  *See* N.T., 4/6/21,

_____

[5] Initially, we note that the PCRA court concluded the prior convictions would have been inadmissible by cursorily citing to Rule 609 and reasoning based on the ages of the offenses and the fact that credibility was at issue, that the probative value was substantially outweighed by the prejudicial effect. *See* PCRA Ct. Op. & Order, 6/6/24, at 7.  However, the court did not consider all five of the relevant factors in ascertaining whether the convictions were admissible. *Cf*. *Commonwealth v. Stevenson*, 318 A.3d 1264, 1268 n.3 (Pa. 2024) (indicating a Rule 609 balancing test requires consideration of (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility).  Therefore, while the convictions were potentially inadmissible pursuant to the plain language of Rule 609, our disposition of this claim based on the prejudice prong of the ineffectiveness test does not indicate our agreement with the PCRA court's determination that the convictions were in fact inadmissible.

at 24-25.  After Riggleman let her loose, Maurer attempted unsuccessfully to strike him and he again pinned her to the floor, straddled her, and continued to hit her on the sides of the head.  *See id*. at 29.  The strikes felt to Maurer as if they were from closed fists.  *See id*. at 37.  Maurer agreed that the video Riggleman took that partially captured the incident was an accurate depiction of a portion of the assault.  *See id*. at 34.  As a consequence of Riggleman's attack, Maurer suffered a ruptured left eardrum, her left (non-dominant) hand was broken—for which she required surgery—and she had a concussion.  *See id*. at 49-51.  Additionally, Shawn Quinn, D.O. ("Dr. Quinn"), the emergency room physician who treated Maurer, also testified to his observations of Maurer's ruptured ear drum, broken hand, and bruises which Maurer explained contemporaneously had resulted from strikes to the face.  *See id*. at 137.

The physical evidence corroborates that Maurer's testimony: photos of Maurer's injuries depict bruising to her face.  *See*, *e.g.*, N.T., 4/6/21, at Ex. C-3.  Additional photos from the next day, *i.e.*, December 17, 2018, show Maurer with two purplish, swollen, black eyes.  *See id*. at Ex. C-14, C-15. However, notwithstanding the incontrovertible evidence that Riggleman had punched Maurer in the face, he incredibly testified that he did not strike her at all with his fists.  *See* N.T., 4/7/21, at 31.  On cross-examination, Riggleman adamantly denied he had punched Maurer: "No, I did not punch her.  This kind of movement of getting her away and pushing her and throwing her to the floor, ***but I did not swing at her or punch her in the face at***

- 10 -

***any time***," ***id***. at 58 (emphasis added), and when asked about where Maurer's black eyes had come from, Riggleman explained, "From her falling around and hitting stuff. ***Plus [Maurer] already had swelling around her eyes naturally. It's not from me punching her in the face***." ***Id***. (emphasis added).[6] Thus Riggleman's testimony was squarely at odds with the evidence, properly admitted at trial, of his assault on Maurer.

We also note that the trial court properly instructed the jury that the evidence of Riggleman's prior criminal convictions were not to be considered evidence of his guilt, but rather may be considered for its impact on his credibility, which depends on the "type of crime committed, how long ago it was committed, and how it may affect the likelihood the defendant has testified truthfully in this case." ***Id***. at 127-28.

Riggleman argues that this case hinges on credibility and that the evidence of his prior convictions "destroyed his credibility." Riggleman's Br. at 42. However, as noted above, Riggleman's testimony, which was totally at odds with the other evidence in the case, was already incredible such that there is not a reasonable probability that the admission of his prior convictions for *crimen falsi* offenses affected the outcome. ***Cf***. ***Buterbaugh***, 91 A.3d at 1264-65 (ineffectiveness claims arising from admission of potentially inadmissible prior criminal convictions may fail for lack of reasonable basis

_____

[6] Riggleman also alleged apparently for the first time at trial that Maurer had attacked him with a knife. ***See*** N.T., 4/7/21, at 64-66.

and/or prejudice); ***Commonwealth v. Hannibal***, 156 A.3d 197, 217 (Pa. 2016) (jurors are presumed to follow instructions, including the instruction that prior convictions are not evidence of guilt and were required to consider prior criminal convictions for judging credibility and weight of witnesses' testimony).[7]  For these reasons, Riggleman's ineffectiveness claim against trial counsel based on the admission of his old *crimen falsi* convictions fails, and he is due no relief.

In his second issue, Riggleman argues the PCRA court erred in denying relief based on his claim that trial counsel was ineffective for providing to the Commonwealth the video partially depicting the assault.  He maintains counsel was under no obligation to turn the video over.  Riggleman argues the video helped the jury decide Maurer was more credible than he was, when, otherwise, there would have only been conflicting testimony.  ***See*** Riggleman's Br. at 43, 45.

_____

[7] Riggleman relies on ***Commonwealth v. Hamilton***, 303 A.3d 823, 832-35 (Pa. Super. 2023) wherein this Court concluded trial counsel was ineffective for failing to oppose joinder of two cases, in one of which Hamilton was alleged to have stolen a firearm, and in the other, he was alleged to have used that firearm the next day to fatally shoot someone.  This Court concluded joinder was improper because the theft was irrelevant to the murder; counsel had no reasonable strategic basis for failing to oppose the joinder motion; and the joinder prejudiced him as it allowed the Commonwealth to "repeatedly characterize Hamilton as a thief, allowing the jury to consider this as probative in his homicide trial."  As ***Hamilton*** concerned the improper joinder of two cases rather than the admission of potentially inadmissible *crimen falsi* convictions, we conclude ***Hamilton*** is inapt to the case at hand.  ***See id***.

The PCRA court considered this issue and determined it warrants no relief. Specifically, the court noted that trial counsel testified at the evidentiary hearing that he and Riggleman together decided to disclose the video to the Commonwealth to attempt to get the Commonwealth to dismiss the charges. *See* PCRA Ct. Op. & Order, 6/6/24, at 4. The court rejected as incredible Riggleman's claim that he did not authorize trial counsel to provide the video to the Commonwealth. *See id*. The court reasoned from there that because Riggleman "consented to trial counsel using the video as a bargaining tool prior to trial, and because the video contains, to some extent, exculpatory evidence of [the v]ictim's behavior leading up to the incident in question, the court cannot conclude that [Riggleman's] claim has arguable merit." *Id*. Additionally, the PCRA concluded that "trial counsel had a reasonable basis for providing the video to the Commonwealth, namely[,] negotiations with the Commonwealth authorized by [Riggleman]." *Id*. at 4-5.

Following our review, we conclude that Riggleman's issue at a minimum fails the arguable merit and no-reasonable-basis prongs of the ineffectiveness test. Firstly, we observe that Riggleman, in his petition, unequivocally asserted trial counsel turned the video over without his consent: "[Riggleman] avers that he was denied effective assistance of counsel insofar as counsel, ***without the consent of [Riggleman]***, handed over to the Commonwealth certain video tapes of the incident which were later used by the Commonwealth to establish [Riggleman's] guilt." Post Conviction Collateral

Relief Issues, 3/21/23, at ¶ 3 (emphasis added). At the evidentiary hearing, Riggleman unequivocally testified that he did not authorize trial counsel to disclose the video to any third parties or to hand it over to the Commonwealth, and it was not his intention for the video to be disclosed. **See** N.T., 8/14/23, at 19. Trial counsel testified at the evidentiary hearing that he and Riggleman jointly decided to disclose the video because it showed Maurer was the initial aggressor. **See id**. at 65-66. As noted above, the PCRA court concluded Riggleman was incredible, and that he had in fact authorized counsel to disclose the video, and, accordingly, his claim lacked arguable merit. This Court will not disturb the PCRA court's credibility determinations where supported by the record. **See Staton**, 184 A.3d at 954. We additionally note that the video, which depicts Riggleman in the beginning with a bloody nose and stating therein that Maurer had hit him first, corroborated counsel's assertion that the video showed Maurer had been the initial aggressor, and we cannot conclude that counsel "had no reasonable basis designed to effectuate his client's interests." **Lott**, 581 A.2d at 614.

In his final issue, Riggleman raises a layered ineffectiveness claim against PCRA counsel for failing to raise the ineffectiveness of trial counsel for not objecting to allegedly expert testimony by a police witness that Riggleman was the "primary aggressor," which is why the officer charged Riggleman.

Following the denial of a PCRA petition, the petitioner may at the first opportunity raise ineffectiveness claims against PCRA counsel. **See**

***Commonwealth v. Snyder***, 316 A.3d 178, 182 (Pa. Super. 2024) (citing

***Bradley***, 261 A.3d at 401).  Also, as this Court has explained:

> Further, in addressing a petitioner's layered claim of ineffectiveness, we presume counsel is effective and determine whether the petitioner rebutted that presumption by establishing: "[(1)] the underlying claim of ineffectiveness has arguable merit[; (2)] counsel's act or omission was not reasonably designed to advance the interest of the [petitioner; and (3) the petitioner] was prejudiced—that is, but for counsel's errors, the outcome of the proceeding would have been different." ***Bradley***, ***supra*** at 390 (citations omitted).
>
> Additionally, "[i]n determining a layered claim of ineffectiveness, the critical inquiry is whether the ***first attorney*** that the [petitioner] asserts was ineffective did, in fact, render ineffective assistance of counsel."

***Commonwealth v. McCready***, 295 A.3d 292, 298-99 (Pa. Super. 2023)

(emphasis and brackets in original).

We observe that Riggleman raised his layered ineffectiveness claim at the first opportunity, namely, in his Rule 1925(b) statement.  ***See*** Rule 1925(b) Statement, 8/23/24, at ¶ 3(b).  As such, we proceed to review the claim.

Pennsylvania Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

    (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. ***See also Commonwealth v. Grubbs***, 330 A.3d 444, 450 (Pa. Super. 2025) (explaining that non-technical testimony, that is not beyond the comprehension of laypersons, that does not require scientific, technical, or other specialized knowledge, is not expert testimony). Additionally, where an officer's testimony is at issue, this Court has distinguished expert from lay testimony as follows:

> We have explained that a law enforcement officer's testimony is lay opinion if it is limited to what he observed . . . or to other facts derived exclusively from a particular investigation. . . . On the other hand, an officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the [fact finder] based on that specialized knowledge.

***Commonwealth v. Greene***, 340 A.3d 324, 329 (Pa. Super. 2025) (internal citation omitted).

Regarding improper bolstering, this Court has explained that "improper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: "(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses testimony." ***Commonwealth v. Hartey***, 621 A.2d 1023, 1026 (Pa. Super. 1993) (internal citation and quotations omitted).

Riggleman argues that Officer DeFrank testified as an expert when he explained he charged Riggleman after reviewing the evidence and determining that Riggleman was the primary aggressor notwithstanding that he was not the initial aggressor. **See** Riggleman's Br. at 48. He also argues Officer DeFrank improperly bolstered Maurer's credibility by implying he believed her, which was why he arrested Riggleman. **See id**. at 50. Riggleman maintains that the "entire case boiled down to the credibility of the complainant against the credibility of [him]," and Officer DeFrank's testimony unfairly prejudiced him. **See id**. at 50-51.

The PCRA court concluded Riggleman's layered ineffectiveness claim merits no relief:

> This testimony was offered as to how the officer conducted his investigation and why he decided to charge [Riggleman] despite the fact that [Maurer] told the officer that she had struck [him] first. The court does not view this testimony as expert testimony or opinion as argued by [Riggleman]. Furthermore, the court instructed the jury multiple times that the mere fact that police decided to charge [Riggleman] is not evidence that he is guilty. (**See** N.T., 4/5/[]21, at 13:2-9, 14:3-4, 82:6-15; N.T., 4/7/[]21, at 140:20-25). In addition, the court instructed the jurors multiple times that they, and not anyone else including the arresting officer, were the sole judges of the facts and that it was their role to determine what happened in this case. (**See** N.T., 4/5/[]21, at 85:3-7, 91:5-7; N.T., 4/7/2[1], at 124:10-12, 125:7-11, 146:23-25.)[] "[A] jury is presumed to follow a trial court's instructions." **Commonwealth v. Reid**, 99 A.3d 470, 501 (Pa. 2014). For all of these reasons, there is no arguable merit to [Riggleman's] . . . claim.

PCRA Ct. Op., 9/3/24, at 6.

Following our review, we discern no error by the PCRA court in concluding Riggleman's layered ineffectiveness claim merits no relief. Initially, we note that Riggleman fails to show what scientific, technical, or other specialized knowledge Officer DeFrank allegedly used to determine Riggleman was the primary aggressor. In the absence of such a showing, Officer DeFrank's testimony, in which he explained his reasoning based on his personal observations in this particular investigation, is lay rather than expert. **See** Pa.R.E. 702; **see also Greene**, 340 A.3d at 329; **Grubbs**, 330 A.3d at 450.

Regarding Riggleman's improper bolstering issue, we note that he has failed to show prejudice. As stated **supra**, this Court has held in relevant part that improper bolstering occurs when, *inter alia*, the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity. **See Hartey**, 621 A.2d at 1026. Here, Officer DeFrank indicated in passing that as part of his investigation, he was required to "charge and get an arrest warrant for whatever crimes . . . the level of injury dictates . . .[;]" and as part of his investigation, he needed to determine who the "primary aggressor" was:

> **So based off [Maurer's] injuries**, based off of her admission that she struck him first and that she struck him one time and the fact that her story did match the injuries that I observed . . . she did have several injuries . . .. Based off of her statements, that would make [] Riggleman the primary aggressor.

N.T., 4/6/21, at 162-63 (emphasis added). Officer DeFrank's testimony was limited to the specific question of how he investigated the incident and decided to charge Riggleman. This Court has rejected an improper bolstering challenge in similar circumstances where an officer testified to his reasons for charging the defendant where "[t]he testimony regarding [the v]ictim's injuries was cumulative because the jury had already been presented with [that] evidence and [the officer's] testimony did not include any facts about the incident which were not already known by the jury." ***Commonwealth v. Levengood***, 277 A.3d 1170 (Pa. Super. 2022) (unpublished memorandum at *8-*9) (adopting the PCRA court's opinion disposing of this issue).[8] Here, as in ***Levengood***, Officer DeFrank's testimony was cumulative of: Maurer's testimony (in which she addressed her prior statements to officers); the evidence documenting her injuries; and the fact that Riggleman had been charged in connection with this incident. Additionally, the trial court instructed the members of the jury that they were to be the "sole judges of the credibility of the witnesses and their testimony, and that means you have to judge the truthfulness and accuracy of each witness's testimony and decide whether you believe all, part, or none of that testimony." N.T., 4/7/21, at 124. In sum, Officer DeFrank's testimony was cumulative, and the trial court properly instructed the jury that it was to be the sole judge of credibility. Riggleman

---

[8] ***See*** Pa.R.A.P. 126(b) (non-precedential decisions of this Court filed after May 1, 2019 citable for their persuasive value).

cannot show prejudice, and, accordingly, his layered ineffectiveness claim fails. *See also Commonwealth v. Lam*, 684 A.2d 153, 162 (Pa. Super. 1996) (concluding trial counsel was not ineffective for failing to object to testimony by a Pennsylvania State Police trooper that he believed in a witness's veracity at the time of an investigatory interview and that it did not create undue prejudice because it was a "proper explanation of investigative procedures").

As none of Riggleman's issues merit relief, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/4/2025